IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| YAN REMPEL<br>48 Bellwood Drive<br>Feasterville/Trevose, PA 19053 | : <br> : <br> : <br> : | |
| Plaintiff, | : <br> : | CIVIL ACTION<br>No.: |
| v.<br>COOPER HEALTH SYSTEM<br>One Cooper Plaza<br>Camden, NJ 08103 | : <br> : <br> : <br> : | |
| Defendants. | : | JURY TRIAL DEMANDED |

CIVIL ACTION COMPLAINT

1. This action has been initiated by Mr. Yan Rempel (hereinafter referred to as "Plaintiff," or "Rempel" unless indicated otherwise) for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq., as amended by the Civil Rights Act of 1991, at 42 U.S.C. §1981(a) ("Title VII") when he was denied training, reassigned and terminated based upon his national origin and/or race (Russian/Caucasian).

JURISDICTION AND VENUE:

2. This Court may exercise original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1391 and the claim is substantively based on Title VII. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because Defendant conducts substantial, systematic and continuous activity in New Jersey and is

subject to personal jurisdiction in New Jersey.

3. 28 U.S.C. §1331, Diversity Jurisdiction and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Defendant because Defendant, by systematically soliciting business in New Jersey, has sufficient minimum contacts with this judicial district that the exercise of such jurisdiction comports with judicial notions of fair play and substantial justice, satisfying the standards set forth in International Shoe Company v. Washington, 326 U.S. 309 (1945), and its progeny.

5. All conditions precedent to the institution of this suit have been fulfilled. See *Notice of Right to Sue and Charge attached as Exhibit A*.

## PARTIES

6. Plaintiff, Mr. Yan Rempel, at the time of the cause of action was 54 years of age Russian individual and a citizen of the Commonwealth of Pennsylvania therein at 48 Bellwood Drive, Feasterville/Trevose, PA 19053, PA 19053.

7. Plaintiff is proficient in English.

8. Defendant, Cooper Health Systems (hereinafter "Cooper"), is a corporation engaged in an industry affecting commerce with offices at One Cooper Plaza, Camden, NJ, 08103.

7. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

8. The foregoing paragraphs are fully incorporated herein as though set forth at length.

9. On April 21, 2014, Plaintiff was hired as a Licensed Stationary Engineer in the Boiler Room.

10. At the time of he was hired, Plaintiff had (1) three licenses in his field of work and (2) twenty years of experience in HVAC, refrigeration and electrical work.

11. On the that same day Plaintiff was hired, Defendant also hired Mr. Kevin Ford (African American), as a Licensed Stationary Engineer.

12. Plaintiff was more experienced than Mr. Ford and had more licenses.

13. Mr. Stephan Robinson (African American), Plaintiff's and Mr. Ford's direct supervisor, was responsible for training, issuing assignments and general supervision of Plaintiff and Mr. Ford.

14. Defendant Cooper vested Mr. Robinson with supervisory authority and/or the authority to control the terms, conditions, benefits and assignments of Plaintiff's employment.

15. During the first few weeks of Plaintiff's employment, amongst other tasks, Plaintiff, as a Licensed Engineer with twenty years of experience, was assigned to mop the floors whereas Mr. Ford was not.

16. Mr. Robinson failed to adequately/properly train Plaintiff to carry out the duties of his position.

17. The training was supposed to include Defendant's agents demonstrating/teaching Plaintiff how to accurately do rounds and chemical tests.

18. Plaintiff asked Mr. Robinson to train him on various necessary duties but Mr. Robinson refused stating "don't worry. Take your time. I'll teach you soon." Plaintiff eventually asked Mr. Jose Edwards (Hispanic), Licensed Stationary Engineer to show Plaintiff how to do rounds and Mr. Edwards hastily showed Plaintiff how to do rounds. From then on, Plaintiff conducted rounds without assistance.

19. Mr. Robinson, after Plaintiff had already been hired, would ask Plaintiff if Plaintiff even had a high school diploma despite Plaintiff being more than qualified for the position.

20. Mr. Robinson would routinely belittle Plaintiff because of his accent and insinuate that Plaintiff was unintelligent because of his Russian accent.

21. In April 2014, Mr. Robinson exclaimed that Plaintiff should go to English school stating that Plaintiff's English was terrible where that conversation lasted one hour.

22. Mr. Robinson took every available opportunity to berate and belittle Plaintiff where neither Mr. Ford or Mr. Edwards were subjected to the same treatment and/or scrutiny.

23. Mr. Robinson, would routinely ask Plaintiff how did he get licenses if he can't even speak English properly- referring to Plaintiff's Russian accent.

24. Given Mr. Robinson's abusive nature and intolerance for Plaintiff, Plaintiff

was overly anxious in Mr. Robinson's presence and tried very hard to please Mr. Robinson.

25. On another occasion, in May 2014, Defendant's fire alarm rang and in light of this emergency, Plaintiff ran into Mr. Robinson's office because Plaintiff needed to be shown the procedures for handling the fire alarm. Rather, because Mr. Robinson was on a personal phone call, Mr. Robinson berated Plaintiff and yelled at him stating "go do your job." Plaintiff nervously replied that he didn't know how to handle the alarm where Mr. Robinson responded "read the manual"- which Mr. Robinson had to find for Plaintiff because it was unattainable. While Plaintiff read the manual, Mr. Robinson screamed at Plaintiff yelling "faster, faster, people are dying!"

26. On another occasion in May 2014, Mr. Robinson required Plaintiff to unclog and fix the vacuum cleaner, vacuum emergency generator dampers, every 2 hours do boiler room rounds, 3 time do chemical tests, and mop all the gray area in the boiler room. Plaintiff only had a 5-minute breaks in that 8-hour shift. All the while, Mr. Robinson was asleep in his armchair. Mr. Robinson did not unfairly assign and/or scrutinize Mr. Ford or Mr. Edwards in the same manner is he did Plaintiff.

27. On another occasion in May 2014, Mr. Robinson contacted Plaintiff at 11:20 p.m. and advised Plaintiff, that Plaintiff had to: (1) do 8 chemical tests on 8 different sheets; (2) on every test Plaintiff had to collect fresh water samples; (3) mop the entire floor in the boiler room; and (4) had to do rounds every 2 hours. Plaintiff was not permitted to practice the chemical test before doing them but Plaintiff completed every tasked asked of him. Again, Plaintiff only had a 5-minute break to use the bathroom in

an 8-hour shift. Mr. Robinson did not treat any other employee in this manner.

28. On another occasion in May 2014, Mr. Robinson repeatedly insisted that Plaintiff needed to learn English and that Plaintiff couldn't speak English- referring to Plaintiff's accent. Mr. Robinson made these derogatory statements when he (Mr. Robinson) directed Plaintiff to unscrew the tube cap on a very dangerous spot. Plaintiff had to stay with one foot on the top of the boiler and with another leg pushed on the pipe wrench on the pipe cup in the air. (unsafe and uncomfortable position). Plaintiff repeatedly tried to tell Mr. Robinson that the position Plaintiff was in was dangerous. Mr. Robinson did not subject other Non-Caucasian and/or Non-Russian employees to such abuse and danger.

29. The above assignments were especially rigorous, abnormal assignments and certainly were never assigned to Mr. Ford (African American) or Mr. Edwards (Hispanic).

30. On another occasion in May 2014, Mr. Robinson instructed Plaintiff to wear working gloves which were soiled (contained oil both inside and outside of the glove). Plaintiff tried to find better gloves but Mr. Robinson stated "what are you looking for? Did you have better gloves in Russia?"

31. On another occasion in May 2014, Plaintiff had finished his rounds and chemical tests and went to go sit quietly next to the workshop grill. Mr. Robinson turned suddenly towards Plaintiff and stated "you can't crawl behind peoples' backs otherwise somebody will hit you- where Mr. Robinson, holding a pipe, made a threatening/scary and sudden motion towards Plaintiff (almost hitting Plaintiff with the pipe.) Plaintiff was

shocked.

32. On another occasion in May 2014, Mr. Robinson was giving Plaintiff instructions and Plaintiff nervously advised Mr. Robinson that he was confused. Mr. Robinson responded by shaking his head and stating "you don't understand because your English is bad and your accent… I don't know what I'm going to do with you. Kevin had no problem understanding me," and walked away from Plaintiff.

33. On another occasion in May 2014, Mr. Robinson and Plaintiff were working on the boiler controls. Mr. Robinson directed Plaintiff to hold a piece of wire between the terminals instead of using jumper cables. Plaintiff held the wire for a long time under the terminals and his hands became tired and started to shake. Mr. Robinson became upset and told Plaintiff to keep make the wire tighter to the terminals. Plaintiff responded that Plaintiff was doing his best and Mr. Robinson responded "in your country you can do your best; here in America American guys just do their job."

34. On another occasion in early June 2014, Mr. Robinson encountered Plaintiff while Plaintiff was on his way into the boiler room and began to berate Plaintiff. Specifically, Mr. Robinson said, "I thought I told you to leave the boiler room. Do you have problem understanding English! Are all of you from Russia stubborn. You have to forget what you learned in your country. Here in America, you just have to follow your boss' rules."

35. On another occasion in June 2014, Mr. Robinson was discussing Plaintiff's knowledge and existing opportunities in the HVAC department and then advised Plaintiff that Mr. Robinson didn't believe knowledge and experience would be enough for

Plaintiff to survive in that department because of his heavy accent and origin.

36. On another occasion in late June 2014, Mr. Robinson directed Plaintiff to paint two small square places on the floor with grey and light grey colors side by side in order for Mr. Robinson to evaluate his preference for the color of the floor behind the boiler room. As Mr. Robinson didn't specify the size of the sample, Plaintiff painted approximately one square foot of each color. When Mr. Robinson reviewed Plaintiff's work, Mr. Robinson stated "Didn't I tell you to paint a small size? Do you understand plain English? Sorry, I can't explain it to you in Russian."

37. It was not uncommon for Plaintiff to request instruction from co-workers because he feared harassment, scolding, beratement as much of Mr. Robinson's harassing/discriminatory comments lasted longer than forty-five minutes.

38. On July 8, 2014, Mr. Robinson terminated Plaintiff's employment claiming that Plaintiff made an error in one of his duties.

39. Plaintiff was subjected to more rigorous assignments and intense scrutiny than Mr. Ford and Mr. Edwards and still performed his duties to satisfaction.

40. Mr. Kevin Ford made errors and more grave errors than Plaintiff but was not terminated by Defendant/Mr. Robinson.

41. Plaintiff had more experience, more licenses and better job performance than Mr. Ford but Defendant unfairly targeted Plaintiff in terminating Plaintiff. Defendant did not terminate Mr. Ford or Mr. Edwards for similar or more severe mistakes.

42. As a result of the above comments/conduct and harassment to which

Plaintiff was subjected, Plaintiff endured great anxiety and ultimately required and continues to require medical treatment.

43. Mr. Robinson's discrimination not only manifested itself in slurs/hateful speech, harassing conduct, insults and bigotry but it also subjected Plaintiff to discriminatory assignments, lack of training and discriminatory termination.

44. Defendant's stated reason for terminating Plaintiff's employment was a pretext for Mr. Robinson's obvious discriminatory animus and intolerance for Plaintiff's race/national origin.

<u>COUNT I</u>
*Title VII-Race/Nationality*
**Plaintiff Rempel v. Defendant**

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. The actions of the Defendant, through its agents, servants and employees, were discriminatory in nature and motivated by reason of Plaintiff's race/nationality, ultimately resulting in his reprimand, harassment, reassignment, denial of training and/or termination which constitutes a violation of Title VII of the Civil Rights Act of 1964.

47. The conduct of Defendants, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendant.

48. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant, in violation of Title VII of the Civil Rights Act

of 1964, Plaintiff Rempel has sustained severe emotional and psychological distress, a loss of earnings, plus the loss of future earning power, plus back pay and interest due thereon.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions, as permitted by applicable law;

D. Plaintiff is to be awarded liquidated and/or punitive damages to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future (as permitted under applicable claims/laws);

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal.

## JURY DEMAND

Plaintiff demands trial by jury.

ABARA LAW FIRM, PLLC.

By:     s/ Obinna I. Abara

OBINNA I. ABARA, ESQUIRE
Attorney I.D. No.: 204964
1950 Butler Pike, # 255
Conshohocken, PA 19428
(215)360-3260
*Attorney for Plaintiff*

Date: __May 19, 2017__

## VERIFICATION

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

05-19-17
Date

*Yan Rempel*
YAN REMPEL, PLAINTIFF